Below is an Opinion of the Court.

RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: ) | |
| ) | Bankruptcy Case |
| ROWE SANDERSON III, ) | No. 09-38818-rld7 |
| ) | |
| Debtor. ) | |
| _____) | |
| ) | |
| HANK AND DOLLY WILLMS, ) | |
| ) | Adv. Proc. No. 10-03071-rld |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | MEMORANDUM OPINION |
| ROWE SANDERSON III, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

On October 4, 2010, trial ("Trial") proceeded in Hank and Dolly Willms' (collectively, "Willms") adversary proceeding ("Adversary Proceeding") against Rowe Sanderson III ("Sanderson") to except the Willms' claim against Sanderson for $550,000 plus interest from Sanderson's discharge, based on Sanderson's alleged fraud. Following the presentation of evidence, I made oral findings and conclusions on the record and found in favor of the Willms. Before a judgment was entered,

Page 1 - MEMORANDUM OPINION

Sanderson filed a "Motion of Defendant for New Trial, BR 9023, FRCP 59; Motion to Reopen Case and for Reconsideration; Motion to Amend Findings BR 7052, FRCP 52" ("Reconsideration Motion"). Following two status/scheduling hearings and the parties' submission of further memoranda and evidence in the forms of affidavits, authenticated exhibits and deposition testimony of Ms. Libby Hervey, I am closing the record. Based upon the entire record of the Trial and the subsequent evidentiary submissions of the parties, I am prepared to announce a decision on the Reconsideration Motion.

In deciding this matter, I have considered carefully a) the testimony presented and the exhibits admitted at the Trial, and b) the parties' legal memoranda and evidentiary submissions presented subsequent to the Trial. In addition, I have taken judicial notice of the dockets and documents filed in this Adversary Proceeding and in Sanderson's main chapter 7 case no. 09-38818-rld. Federal Rule of Evidence 201; In re Butts, 350 B.R. 12, 14 n.1 (Bankr. E.D. Pa. 2006). In light of that consideration, this Memorandum Opinion sets forth the Court's final findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a), applicable in this Adversary Proceeding under Federal Rule of Bankruptcy Procedure 7052.[1]

My ultimate conclusion is that the Reconsideration Motion is well taken, and I am prepared to reverse the determination that I made at the Trial and enter a judgment of dismissal in favor of Sanderson. My

---

[1] Hereafter, unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as Civil Rules.

Page 2 - MEMORANDUM OPINION

reasons follow.

I. <u>General Standards in Exception to Discharge Litigation</u>

One of the primary objectives of the Bankruptcy Code is to provide a fresh start for debtors overburdened by debts that they cannot pay. <u>Snoke v. Riso (In re Riso)</u>, 978 F.2d 1151, 1154 (9th Cir. 1992); <u>Toys "R" Us, Inc. v. Esgro, Inc. (In re Esgro, Inc.)</u>, 645 F.2d 794, 798 (9th Cir. 1981). Accordingly, the statutory exceptions to discharge are construed strictly in favor of the debtor and strictly against those seeking to except debts from the debtor's discharge. See, e.g., <u>In re Riso</u>, 978 F.2d at 1154; <u>First Beverly Bank v. Adeeb (In re Adeeb)</u>, 787 F.2d 1339, 1342 (9th Cir. 1986); <u>Devers v. Bank of Sheridan, Mont. (In re Devers)</u>, 759 F.2d 751, 754 (9th Cir. 1985).[2]

The Willms' complaint ("Complaint") in this Adversary Proceeding states a claim for relief under § 523(a)(2)(A) for money obtained by "false pretenses, a false representation, or actual fraud." The Willms bear the burden of proof to establish each element of their claim for relief by a preponderance of the evidence. See <u>Grogan v. Garner</u>, 498 U.S. 279 (1991); <u>In re Adeeb</u>, 787 F.2d at 1342. The parties do not disagree as to the elements required to establish an exception to discharge claim for fraud under § 523(a)(2)(A):

---

[2] In his main case, Sanderson waived his discharge in order to settle an adversary proceeding filed by the United States Trustee to deny him a discharge. See the dockets in case nos. 09-38818-rld7 and 10-3110-rld, particularly Docket No. 74, entered on October 5, 2010, in case no. 09-38818-rld7. However, in spite of Sanderson's waiver of his discharge, the same principles apply when determining whether it is appropriate to pile on an additional $550,000 plus of nondischargeable debt, based on alleged fraud, where liability for the debt is at issue.

Page 3 - MEMORANDUM OPINION

> (1) the debtor made a representation [to the creditor];
> (2) at the time debtor knew the representation was false;
> (3) debtor made the representation with the intention and purpose of deceiving the creditor;
> (4) the creditor justifiably relied on the representation;
> (5) the creditor sustained damage as the proximate result of the representation's having been made.

Mandalay Resort Group v. Miller (In re Miller), 310 B.R. 185, 194 (Bankr. C.D. Cal. 2004). See Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000).

The parties do disagree as to whether Sanderson can be held liable for money received by Sanderson's corporate affiliate, the Sanderson Company, without piercing the corporate veil. However, personal benefit is not required to except a debt based on the debtor's fraud from discharge.

> Courts once limited the application of § 523(a)(2)(A) to situations in which the debtor received a benefit from his or her fraudulent activity. See Muegler v. Bening, 413 F.3d 980, 983 (9th Cir. 2005) (citing cases). However, in Cohen v. De la Cruz, the Supreme Court held that the reach of § 523(a)(2)(A) is not limited to the amount of benefit received by the debtor. Rather, § 523(a)(2)(A) "prevents the discharge of all liability arising from fraud." 523 U.S. at 215 . . . Following Cohen, we have concluded that there is no requirement that the debtor "have received a direct or indirect benefit from his or her fraudulent activity in order to make out a violation of § 523(a)(2)(A)." Muegler, 413 F.3d at 983-84. Other circuits have held similarly. (citations omitted)

Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222-23 (9th Cir. 2010).

Recognizing the reality that few debtors are likely to break

Page 4 - MEMORANDUM OPINION

down and confess to fraud on the witness stand, fraudulent intent may be established through the presentation of circumstantial evidence or evidence of a pattern consistent with the fraud alleged. See, e.g., In re Adeeb, 787 F.2d at 1343; In re Devers, 759 F.2d at 754; and In re Johnson, 68 B.R. 193, 198 (Bankr. D. Or. 1986).

II. The Determination at Trial

The background of the Adversary Proceeding, briefly stated, is as follows: The Sanderson Company had entered into a contract to sell certain real property ("Real Property") to La Pine Village LLC ("La Pine Village"), and La Pine Village signed a promissory note (the "LPV Note") in the principal amount of $1,500,000, bearing interest at 7% per annum, and due and payable in full on November 29, 2006, payable to the Sanderson Company. See Exhibit 1. Payment of the LPV Note was secured by a deed of trust on the Real Property.

The Willms and Sanderson apparently had been involved in a number of business transactions together over a number of years. On October 6, 2006, Sanderson and the Sanderson Company needed operating capital, and Sanderson convinced Willms to loan the Sanderson Company a total of $500,000, repayment of which was to be secured by the LPV Note. A copy of a promissory note ("Promissory Note") made payable to the Willms, in the principal amount of $550,000, dated October 6, 2006, bearing interest at 10% per annum, and signed by Sanderson in behalf of the Sanderson Company, was admitted into evidence. See Exhibit 3. However, Mr. Willms confirmed in his testimony that the actual loan amount total was $500,000. The Promissory Note provided that, "[t]he total principal sum and all accrued interest shall be due and payable on

Page 5 - MEMORANDUM OPINION

or before sixty days from the date of this note [October 6, 2006]."
Since the LPV Note was due and payable in full on November 29, 2006, the
apparent intent of the parties was that the Promissory Note would be paid
in full from proceeds of the LPV Note. See Exhibit 2.

> Sanderson Company and [Sanderson] jointly secure a
> $550,000 loan plus interest from Hank Willms with a
> note executed by Dominic Chan in the amount of
> $1,500,000 [the LPV Note]. This note is due and
> payable on November 30, 2006 at which point Hank
> Willms will be paid in full.

Id. Consistent with that intent, on or about October 11, 2006, the
Willms and Sanderson, in behalf of "Sanderson Company, Inc.," signed a
Security Agreement ("Security Agreement") granting the Willms a security
interest in the LPV Note.[3] See Exhibit 4.

Unfortunately, the LPV Note was not paid in full on its due
date. What followed was a fairly typical "dance" between creditor and
debtor: Over a period of months through the spring of 2007, Mr. Willms
contacted Sanderson repeatedly to check on the status of payment on the
LPV Note and the prospects for payment of the Promissory Note. Although
Sanderson made himself scarce at times, he did advise Mr. Willms that
payment of the LPV Note had been delayed by the serious illness of La
Pine Village's principal, and he requested patience because the LPV Note
would be paid at "any time."

---

[3] Curiously, since the Security Agreement purported to give the
Willms a security interest in the LPV Note, arguably a negotiable
instrument, the Sanderson Company, Inc. was to "keep the LPV Note at its
principal place of business in Bend, Oregon." See Exhibit 4, Section 3.6
at p. 3. Eventually, however, Sanderson did deliver the LPV Note to the
Willms.

Page 6 - MEMORANDUM OPINION

Finally, on or about August 27, 2007, Mr. Willms received a "Sanderson Communities Inc." check from Sanderson in the amount of $507,117.33, which was deposited. See Exhibit A. One of the frustrations of this adversary proceeding is the lack of any substantial financial records from either side. The Willms did not submit any financial records reflecting receipt of the $507,117.33 payment or how it was applied. However, Mr. Willms and his daughter, Kathy Locke, who provided part-time help to the Willms, including bookkeeping services, both testified that the $507,117.33 payment was applied to an obligation separate from the Promissory Note debt and that the Promissory Note debt was never paid. That evidence was supported by Sanderson's testimony that he asked for the original LPV Note back from Mr. Willms, and Mr. Willms refused to give it to him.

The LPV Note eventually was paid in full, but the exhibits submitted at the Trial tended to indicate that closing of the LPV Note repayment transaction and reconveyance of the deed of trust on the Real Property did not occur until on or about October 30, 2007. See Exhibits 5 and 6.

Sanderson testified that he paid off the Promissory Note with proceeds from the LPV Note and thought the Promissory Note was paid in full. Exhibit B (also admitted as Willms' Exhibit 7) includes an informal accounting of Sanderson Communities receipts and disbursements from September 26, 2002 through March 14, 2008. In August 2007, the Exhibit B accounting reflects a debit for a $500,000 "Note Payable" obligation to Hank Willms and shows a disbursement of $507,117.33, but provides no further relevant detail.

Page 7 - MEMORANDUM OPINION

The essence of the Willms' fraud allegations against Sanderson in the Complaint is that Sanderson induced the Willms to loan the $500,000 to be repaid pursuant to the Promissory Note based on the representation that the Willms would be repaid from the proceeds of the LPV Note, and the Willms justifiably relied on that representation. The Willms further allege that Sanderson had no intent to apply the LPV Note proceeds to pay the Promissory Note when he made that representation, and ultimately did not do so when the LPV Note proceeds finally were received, to the Willms' damage in the amount of the unpaid Promissory Note obligation.

Based on the evidence presented at the Trial, with the parties taking diametrically opposed positions with little documentary support on either side, the decision turned on the credibility of the parties, and I did not find Sanderson credible based primarily on three points in the evidence:

1) Sanderson testified that interest owing on the Promissory Note was paid 100% of the time, on time. Yet, when asked on cross-examination to identify any interest payments on the Promissory Note reflected on the Exhibit B Sanderson Communities accounting, he could not find any.

2) Sanderson testified that the $507,117.33 payment to the Willms in August 2007 was made from LPV Note proceeds. Yet, no evidence was presented, either in terms of a closing statement or otherwise, showing that LPV Note proceeds in the amount of $500,000 or any other amount were paid in August 2007. It was not credible in the circumstances that Sanderson could not come up with some (any!)

documentation to verify where the funds to pay the Willms in August 2007 came from.

      3) Exhibit 6 is a copy of a Letter of Indemnity signed by Sanderson in behalf of the Sanderson Company to Amerititle on October 30, 2007, verifying, among other things, that the LPV Note was "Lost/Misplaced/Destroyed." The Letter of Indemnity was provided in conjunction with reconveyance of the deed of trust on the Real Property. Sanderson signed the Letter of Indemnity verifying that the LPV Note was lost, misplaced or destroyed at a time when Sanderson knew that the original LPV Note was in the hands of the Willms, and Mr. Willms had refused to turn it over to Sanderson.

      As noted above, following the presentation of evidence at the Trial, I made oral findings in favor of the Willms on their § 523(a)(2)(A) claim for relief against Sanderson, but before judgment was entered in favor of the Willms, Sanderson filed the Reconsideration Motion.

III. <u>Standards for Considering a Motion to Amend Findings or for a New Trial</u>

      The Ninth Circuit has held that "[t]here are three grounds for granting new trials in court-tried actions under [Civil] Rule 59(a)(2) [Rule 9023]: (1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence." <u>Brown v. Wright</u>, 588 F.2d 708, 710 (9th Cir. 1978). The standards governing a motion to alter or amend findings or a judgment are essentially the same.

> To succeed on her motion to alter or amend the judgment, debtor must have: (1) presented newly discovered evidence, (2) showed clear error, or

Page 9 - MEMORANDUM OPINION

1 (3) showed an intervening change in controlling law.
<u>Clinton v. Deutsche Bank Nat'l Trust Co. et al. (In re Clinton)</u>, BAP No. WW-10-1285-JuMkH (BAP 9th Cir. Feb. 28, 2011), citing <u>Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.</u>, 571 F.3d 873, 880 (9th Cir. 2009). <u>See</u> <u>Hansen v. Moore (In re Hansen)</u>, 368 B.R. 868, 878 (BAP 9th Cir. 2007) ("Reconsideration under [Civil Rule] 59(e), applicable via Rule 9023, is appropriate only if the moving party demonstrates (1) manifest error of fact; (2) manifest error of law; or (3) newly discovered evidence." (citations omitted)).

When "newly discovered evidence" is alleged as the basis for granting such motions, the following standards generally apply:

> (1) [T]he newly discovered evidence must have been discovered after judgment, and the movant must have been excusably ignorant of the facts at the time of trial despite due diligence to learn about the facts of the case; (2) the evidence discovered must be of a nature that would probably change the outcome of the case; and (3) the evidence must not be merely cumulative or impeaching. 12 Moore's Federal Practice (1998 3rd ed.) at § 59.13[2][d][ii]-[vii]. <u>See also</u> <u>Jones v. Aero/Chem. Corp.</u>, 921 F.2d 875, 878 (9th Cir. 1990) (similar test).

<u>Krommenhoek v. Covino (In re Covino)</u>, 241 B.R. 673, 679 (Bankr. D. Id. 1999).

IV. <u>The Evidence Supporting Amended Findings</u>

In support of the Reconsideration Motion, Sanderson submitted his affidavit ("Sanderson Affidavit") identifying a copy of a document ("Deposit Document") showing a deposit to an account with Bank of the Cascades in the amount of $500,000 on August 27, 2007. <u>See</u> Exhibit E. Typed independent of the deposit slip on the Deposit Document are notations from the "AMERITITLE – ESCROW TRUST ACCOUNT" stating that

Page 10 - MEMORANDUM OPINION

Sanderson Company was receiving payment of the balance of a loan, Escrow No. BA095278A, in the amount of $500,000. The "BUYER" with respect to the subject escrow is identified as La Pine Village, and the Escrow Officer is identified as Libby R. Hervey.

In the Sanderson Affidavit, Sanderson states that following the Trial, he found the Deposit Document in certain personal income tax files in boxes that Sanderson had picked up from his accountant, when he noticed "some Sanderson Community, Inc. files, in the personal files box."

In their initial response to the Reconsideration Motion (Docket Nos. 46 and 48), the Willms argue with some justification that Sanderson did not act with appropriate diligence to find the Exhibit E Deposit Document, which should have been located and exchanged during discovery and presented at the Trial. Sanderson might have been able to locate the Deposit Document prior to the Trial and presented it with his other trial exhibits, but in the circumstances of this case, where both sides appeared to be somewhat "document challenged," I am not prepared to disallow Sanderson from presenting the Deposit Document as evidence in support of the Reconsideration Motion. Exhibit E has been properly authenticated through the Sanderson Affidavit, and I will admit the Exhibit E Deposit Document as evidence relevant to resolution of the Adversary Proceeding.

The Willms further submitted the Declaration of Catherine A. Locke Regarding Interest Payments (Docket No. 52), in which Ms. Locke stated that the Sanderson Communities Inc. check in the amount of $507,117.33, dated August 27, 2007 (see Exhibit A), was not a payment on

Page 11 - MEMORANDUM OPINION

the Promissory Note but in fact was an option payment with respect to an entirely different transaction.

At a preliminary hearing on the Reconsideration Motion on November 30, 2010, I set a deadline of January 7, 2011, for the Willms to submit further evidence in opposition to the Reconsideration Motion. See Docket No. 50. Following a further hearing, I extended the deadline for the Willms to submit further evidence in opposition to the Reconsideration Motion to February 7, 2011. See Docket Nos. 57 and 58.

On February 7, 2011, counsel for the Willms filed his affidavit ("Hostetter Affidavit"), authenticating a number of documents from the LPV Note escrow file at Amerititle and a portion of the deposition of Ms. Libby Hervey, the escrow officer. See Docket No. 60. Some of the authenticated exhibits to the Hostetter Affidavit tend to show that substantial payments were made on the LPV Note in the spring of 2007 that were not paid over to the Willms in spite of Sanderson's promises. See Docket No. 60, Hostetter Affidavit, Exhibits 1-4. However, other authenticated exhibits tend to show that a $500,000 payment on the LPV Note was due and payable on or about August 27, 2007. See Docket No. 60, Hostetter Affidavit, Exhibit 5, at p. 1, Exhibit 7, at p. 1. In addition, Exhibit 9 to the Hostetter Affidavit includes a copy of a $500,000 check, dated August 27, 2007, from Amerititle to the Sanderson Company, representing payment proceeds from the LPV Note, and a copy of a communication from Ms. Hervey to Sanderson confirming Sanderson's receipt of the check. See Docket No. 60, Hostetter Affidavit, Exhibit 9.

On February 8, 2011, counsel for Sanderson filed his own supplemental declaration ("Erwin Declaration"), authenticating a

communication from Sanderson Co., Inc. to Ms. Hervey, dated November 6, 2006, attaching a copy of the Security Agreement, and stating, "So we owe Hank $500,000 plus interest @ 14% when the [LPV Note] is paid in full." See Docket No. 61, Erwin Declaration, Exhibit A.  Counsel for Sanderson also authenticated further portions of Ms. Hervey's deposition, including statements as to Ms. Hervey's understanding that there was a $500,000 obligation to Mr. Willms as of November 2006, but no escrow for that obligation was established.  See Docket No. 61, Erwin Declaration, Exhibit B.

In reaching my decision on the Reconsideration Motion, I have considered both the Hostetter Affidavit and the Erwin Declaration, and all exhibits attached.

After considering all of the parties' supplemental evidence submitted subsequent to the Trial, I find that the $500,000 payment on the LPV Note, made on August 27, 2007, was used by Sanderson to fund most of the Sanderson Communities Inc. $507,117.33 payment to the Willms, likewise by check dated August 27, 2007.  There is no evidence that Sanderson obtained the $500,000 from any other source at that time.  The fact that Sanderson used $500,000 from LPV Note payments to pay the Willms negates any intent by Sanderson from the outset of the Promissory Note transaction not to pay the Willms from proceeds of the LPV Note.  As a bottom line matter, how could I find that Sanderson induced the Willms to loan $500,000 based on a fraudulent representation to pay the Promissory Note from proceeds of the LPV Note when the evidence is now clear that Sanderson caused $500,000 in LPV Note proceeds to be paid to the Willms?  The $507,117.33 payment in August 2007 may not have paid all

Page 13 - MEMORANDUM OPINION

interest accrued on the Promissory Note debt and owing to the Willms, but if there is an interest deficiency, it represents a breach of contract obligation of the Sanderson Company, and based on the evidence before me, I do not find that it is attributable to fraud by Sanderson. Accordingly, the new evidence from the parties causes me to reexamine and reverse my finding of fraudulent intent on the part of Sanderson when he induced the Willms to loan the Sanderson Company $500,000, as documented by the Promissory Note and secured by the LPV Note.

### Conclusion

Based on the foregoing findings, I conclude that the Reconsideration Motion should be granted and that Sanderson is entitled to a judgment of dismissal of the Adversary Proceeding. Mr. Erwin should prepare and submit an order and judgment consistent with this Memorandum Opinion within ten days following its entry.

###

cc:    Lawrence W. Erwin
       D. Zachary Hostetter