UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 20 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| HANK WILLMS and DOLLY WILLMS,<br><br>               Plaintiffs - Appellees,<br><br>  v.<br><br>ROWE SANDERSON, III,<br><br>               Defendant - Appellant. | No. 12-35135<br><br>D.C. No. 3:11-cv-00818-HZ<br>U.S. District Court for Oregon, Portland<br><br>**MANDATE** |

The judgment of this Court, entered July 25, 2013, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule

41(a) of the Federal Rules of Appellate Procedure.

FOR THE COURT:
Molly C. Dwyer
Clerk of Court

Rhonda Roberts
Deputy Clerk

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| HANK WILLMS; DOLLY WILLMS,<br>*Plaintiffs-Appellees*,<br><br>v.<br><br>ROWE SANDERSON III,<br>*Defendant-Appellant*. | No. 12-35135<br><br>D.C. No.<br>3:11-cv-00818-HZ<br><br>OPINION |

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, District Judge, Presiding

Argued and Submitted
November 5, 2012—Portland, Oregon

Filed July 25, 2013

Before: Arthur L. Alarcón, M. Margaret McKeown,
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Nguyen

## SUMMARY[*]

### Bankruptcy

The panel vacated the district court's judgment affirming the bankruptcy court's order granting plaintiffs an extension of time to file a nondischargeability complaint against a debtor.

The panel held that the bankruptcy court erred by sua sponte extending the time after the deadline had already passed and by doing so without either a showing or a finding of cause. The panel remanded with instructions to dismiss.

## COUNSEL

Lawrence W. Erwin, Bend, Oregon, for Defendant-Appellant.

D. Zachary Hostetter, Hostetter Knapp, LLP, Enterprise, Oregon, for Plaintiffs-Appellees.

## OPINION

NGUYEN, Circuit Judge:

Appellant Rowe Sanderson III appeals from the district court's judgment affirming the bankruptcy court's order

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

granting Appellees Hank and Dolly Willmses' motion for an extension of time to file a nondischargeability complaint. We conclude that under our existing case law the bankruptcy court erred in two ways—by sua sponte extending the time for the Willmses to file a nondischargeability complaint after the deadline had already passed and by doing so without either a showing or a finding of cause. Therefore, we reverse the district court and remand with instructions to dismiss.

## I.

### A.

The material facts underlying the parties' dispute are straightforward. Rowe Sanderson's company ("SCI") was experiencing a cash flow problem. It had a promissory note for $1.5 million from La Pine Village, LLC ("LPV") that was secured by a deed of trust to real property in Oregon. Sanderson expected to receive full repayment on the LPV note in two months but in the meantime needed operating capital for SCI.

Hank and Dolly Willms agreed to provide bridge financing. They loaned $500,000 to SCI, in exchange for which SCI executed a note agreeing to repay that amount plus interest within six days after the LPV payment was due. SCI granted the Willmses an interest in the LPV note as security and, sometime later, delivered it to them. LPV did not repay its debt to SCI on time. Consequently, SCI could not repay the Willmses by the agreed date.[1]

---

[1] Sanderson in fact needed to borrow even more money from the Willmses to stay solvent. These additional loans—as well as Sanderson's other debts to the Willmses—are not at issue here.

Approximately nine months after the payments on the
LPV and SCI notes were originally due, LPV repaid $500,000
to SCI.   On the same day, SCI paid the Willmses
$507,117.33, an amount that, according to Sanderson,
represented the principal and remaining interest due on SCI's
note.

The Willmses did not agree that Sanderson's payment
should be applied to the debt on the SCI note and refused to
return the LPV note, which they held as collateral.
Sanderson, meanwhile, desiring to close the LPV transaction,
attempted to induce the title company to release the funds
from escrow and reconvey the deed of trust to LPV.  To that
end, he signed a letter of indemnity in which he claimed that
SCI had lost, misplaced, or destroyed the LPV note, despite
knowing that the note remained in the Willmses' possession.

## B.

Sanderson filed a voluntary Chapter 7 petition seeking
personal bankruptcy protection in October 2009.   The
meeting of creditors was first set in December.  On February
16, 2010—the last possible day—the Willmses moved to
extend the deadline for filing either a complaint objecting to
the petition's discharge or a motion to dismiss.

The bankruptcy court held a hearing on the Willmses'
motion ten days later.  At the hearing, the bankruptcy court
denied all of the relief requested in the Willmses' motion.
After hearing the Willmses' allegations, the bankruptcy court
opined that the Willmses may have "a fairly straightforward
[11  U.S.C.]  §  523(a)(2)(A)  claim"  objecting  to

dischargeability.[2]   The bankruptcy court then sua sponte extended the time for the Willmses to file such a complaint. The Willmses never requested this relief and, by all appearances, never even considered this strategy.[3]   The Willmses' original request for an extension referenced 11 U.S.C. § 707(b)(3) only.   Nonetheless, they adopted the bankruptcy court's suggestion and filed a nondischargeability complaint within the extended time period set by the court.

The Willmses objected to the dischargeability of the debt owed under the SCI note from Sanderson's bankruptcy estate. Overlooking the legal distinction between Sanderson and SCI, the Willmses claimed that Sanderson was personally liable on the SCI note.   Although they acknowledged receiving SCI's $507,117.33 payment, they contended that it applied to Sanderson's other debts to them.   They sought to have the debt on the SCI note declared nondischargeable under 11 U.S.C. § 523(a)(2)(A) on the ground that Sanderson had obtained the loan fraudulently.

At the conclusion of a one-day bench trial, the bankruptcy court found in favor of the Willmses.   In an oral ruling, the bankruptcy court declared SCI's debt to be nondischargeable on the basis that Sanderson failed to prove that he had repaid

---

[2] Under 11 U.S.C. § 523(a)(2)(A), creditors can seek to have certain debts excepted from discharge to the extent they were obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

[3] The bankruptcy court stated at the hearing that it had merely "cut back from the extensive request that [the Willmses] made."   Its subsequent order denied the Willmses' motion "in part."   These statements suggest that the Willmses expressed an intent to seek relief under § 523.   They had not.

the debt from the LPV loan proceeds.  Sanderson moved for
relief from this ruling, presenting documentary evidence for
the first time that he had repaid the Willmses immediately
after receiving LPV's payment.  The bankruptcy court
accepted this evidence, reversed its initial decision, and
entered a judgment of dismissal.

The Willmses appealed the bankruptcy court's judgment
to the district court, arguing that the bankruptcy court had
abused its discretion by allowing Sanderson to present new
evidence after trial.  Sanderson cross-appealed on the ground
that the Willmses should not have been allowed to file their
adversary proceeding at all.  Sanderson asserted that the
Willmses failed to request a time extension to file a
nondischargeability complaint and the bankruptcy court
decided to do so only after the deadline had passed.  In
addition, Sanderson argued that the Willmses had failed to
show cause for needing more time.

The district court affirmed the bankruptcy court's sua
sponte time extension but reversed its decision to consider
Sanderson's post-trial evidence.  Accordingly, the district
court instructed the bankruptcy court to enter judgment
reinstating its initial oral findings in favor of the Willmses.
Sanderson now appeals both of the district court's rulings.[4]

---

[4] As they did below, the Willmses argue that the bankruptcy court
abused its discretion by considering the post-trial evidence because
Sanderson should have presented it earlier.  Even if they are correct, we
need not reach this issue.  As we shall explain, the Willmses failed to
timely file their adversary complaint, rendering the subsequent
proceedings unnecessary.

## II.

Because we are in as good a position as the district court to review the bankruptcy court's findings, we review them independently, *Hedlund v. Educ. Res. Inst. Inc.*, __ F.3d __, No. 12-35258, slip op. at 12 (9th Cir. May 22, 2013) (quoting *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir. 1986)), and apply the same standard of review, *Goodrich v. Briones (In re Schwarzkopf)*, 626 F.3d 1032, 1035 (9th Cir. 2010) (quoting *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990)). The bankruptcy court's legal conclusions are reviewed de novo and its factual findings for clear error. *Id.* (quoting *Tucson Estates*, 912 F.2d at 1166).

## III.

We cannot endorse the bankruptcy court's approach for a number of reasons. First, the court recommended a specific legal course of action for the Willmses to pursue. "[O]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Greenlaw v. United States*, 554 U.S. 237, 244, 128 S. Ct. 2559, 171 L. Ed. 2d 399 (2008) (quoting *Castro v. United States*, 540 U.S. 375, 386, 124 S. Ct. 786, 157 L. Ed. 2d 778 (2003)) (internal quotation marks omitted).

The bankruptcy court also sidestepped Sanderson's due process right to notice and meaningful opportunity to respond. *See Griffin v. Wardrobe (In re Wardrobe)*, 559 F.3d 932, 936 (9th Cir. 2009) ("[W]hile a bankruptcy court has equitable judicial power, its power is confined by ordinary standards of notice and opportunity to be heard."). Sanderson

was denied that right when the court suggested that the Willmses proceed on a completely new theory of relief and—without input from Sanderson—extended their time to do so.

Finally, there are limited circumstances in which a bankruptcy court can sua sponte extend the deadline to file a nondischargeability complaint after the deadline has passed, and this case was not among them. Moreover, even when presented with a timely motion, a bankruptcy court errs by granting it without cause. *See* Fed. R. Bankr. P. 4007(c) (setting strict 60-day deadline for filing complaint alleging a § 523(a) claim and providing that, after a hearing, the court "may for cause" extend the deadline).

### A.

#### 1.

Congress enacted § 523(a)(2) "to prevent a debtor from retaining the benefits of property obtained by fraudulent means and to ensure that the relief intended for honest debtors does not go to dishonest debtors." *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010) (quoting *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000)). If a debt is nondischargeable, the debtor attempting to emerge from bankruptcy remains laden with part of the financial burden that drove him to seek bankruptcy protection in the first place. Section 523(a) therefore stands in tension with the "overriding goal of the Bankruptcy Code to provide a 'fresh start' for the debtor." *Cal. Dep't of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 928 (9th Cir. 1993) (internal quotation marks omitted).

The strict deadline for filing a § 523(c) nondischargeability complaint is one of the ways these competing goals are balanced. *See Hamada v. Far E. Nat'l Bank (In re Hamada)*, 291 F.3d 645, 649 (9th Cir. 2002) (quoting *State Bank & Trust, N.A. v. Dunlap (In re Dunlap)*, 217 F.3d 311, 315 (5th Cir. 2000)). In general, time limits in bankruptcy proceedings may be extended before they expire "for cause shown" and afterwards on motion with an additional showing of excusable neglect for the delay. Fed. R. Bankr. P. 9006(b)(1). Certain deadlines may not be extended. *Id*. R. 9006(b)(2). Other deadlines—including the deadline for filing a nondischargeability complaint—may be extended "only to the extent and under the conditions stated" in the applicable rule. *Id*. R. 9006(b)(3).

Bankruptcy Rule 4007(c) governs the time for filing a complaint objecting to the discharge of a debt due to fraud under § 523(a)(2). It provides that such a motion "shall be filed no later than 60 days after the first date set for the meeting of creditors . . . . On motion of a party in interest, after hearing on notice, the court may *for cause* extend the time . . . . *The motion shall be filed before the time has expired*." Fed. R. Bankr. P. 4007(c) (emphasis added). Thus, when a creditor seeks to extend the 60-day window to file a nondischargeability complaint, the creditor must file a motion before the deadline passes and show cause why the extension is necessary.

"Ninth Circuit law . . . strictly construes Rule 4007(c)" and courts "cannot extend [its] time limit implicitly" where no such motion is made. *Kennerley v. Allred (In re Kennerley)*, 995 F.2d 145, 147 (9th Cir. 1993); *see also Anwar v. Johnson*, __ F.3d __, No. 11-16612, slip op. at 9 (9th Cir. July 2, 2013) ("[W]e have repeatedly held that the

sixty-day time, limit for filing nondischargeability complaints under 11 U.S.C. § 523(c) is strict and, without qualification, cannot be extended unless a motion is made before the 60-day limit expires." (internal quotation marks omitted)); *Anwiler v. Patchett (In re Anwiler)*, 958 F.2d 925, 927 (9th Cir. 1992) ("[A] court no longer has the discretion to set the deadline, nor can it sua sponte extend the time to file . . . ."); *cf. Kontrick v. Ryan*, 540 U.S. 443, 448 n.3, 456 (2004) (characterizing Rule 4004's time prescription, which is "essentially the same" as that in Rule 4007, as "an inflexible claim-processing rule" that is "unalterable on a party's application"). Strict construction of Rule 4007(c) is necessary due to "the need for certainty in determining which claims are and are not discharged." *Kennerley*, 995 F.2d at 148. Accordingly, we held in *Kennerley* that a complaint to determine dischargeability was untimely because "there was no clear indication in the record at the expiration of Rule 4007(c)'s 60-day period for filing complaints . . . that th[e] debt [at issue] was not to be discharged along with all others." *Id*.

**2.**

The Willmses' two-page motion did not provide notice that they intended to have a specific debt declared nondischargeable. The Willmses brought their motion pursuant to Bankruptcy Rules 4004(b) and 1017(e)(1) on the ground that it was the last day to file such a motion and they "require[d] additional time to complete an investigation and evaluate whether or not a complaint objecting to discharge or a motion to dismiss is warranted." It stated only that they sought "an order extending through and including March 11, 2010, the deadline . . . to file a complaint objecting to the debtor's discharge pursuant to 11 U.S.C. §707(b)(3)."

WILLMS V. SANDERSON                    11

This minimal description could not have put Sanderson on notice that the Willmses planned to file a complaint to have the SCI debt (or any specific debt, for that matter) declared nondischargeable. Rule 4004 governs complaints objecting to discharge of the *petition* for one of the reasons set forth in 11 U.S.C. § 727(a). Similarly, Rule 1017(e) governs motions to dismiss a *petition* if discharge would be an abuse of Chapter 7. *See* 11 U.S.C. § 707(b). Rule 4007, in contrast, governs the time for filing a complaint to have a specific *debt* declared nondischargeable due to the fraudulent or wrongful way in which the debtor acquired it. *See* 11 U.S.C. § 523(c). We found it significant in *Kennerley* that, as here, "the motion [did] not even mention Rule 4007 or § 523(c)." *Kennerley*, 995 F.2d at 147.

Discharge and dischargeability "refer to distinct concepts and cannot be used interchangeably" because they "are based on separate policies and are governed by distinct procedural rules." *Irving Fed. Sav. & Loan Ass'n v. Billings (In re Billings)*, 146 B.R. 431, 435 (Bankr. N.D. Ill. 1992). Denial of discharge under 11 U.S.C. § 727 is a remedy that "punishes debtors for misconduct *in the bankruptcy process*." *Latman v. Burdette*, 366 F.3d 774, 782 (9th Cir. 2004) (emphasis added) (citing 11 U.S.C. § 727(a)). Discharge can be denied under certain enumerated circumstances that "would clearly prejudice the rights of all creditors," such as the debtor's failure to produce adequate records, failure to obey a court order or answer questions, improper acts in another bankruptcy case, or prior discharge within a certain time frame. *Billings*, 146 B.R. at 434 (citing *Prairie Prod. Credit Ass'n v. Suttles (In re Suttles)*, 819 F.2d 764, 766 (7th Cir. 1987)).

Similarly, 11 U.S.C. § 707(b) "allows a court to dismiss a Chapter 7 bankruptcy *case*, either *sua sponte* or upon suggestion of the United States Trustee, when an individual has primarily consumer debt and the court finds that granting relief would be a substantial abuse of the provisions of the chapter." *Price v. U.S. Trustee (In re Price)*, 353 F.3d 1135, 1138 (9th Cir. 2004) (emphasis added). Congress enacted it "in response to concerns that some debtors who could easily pay their creditors might resort to chapter 7 to avoid their obligations." *Id*. (quoting 6 *Collier on Bankruptcy* ¶ 707.04) (16th ed. 2012) (internal quotation marks omitted).

In contrast, the rationale for § 523(c)—which allows a creditor to have a specific *debt* declared nondischargeable— "is that the debtor acted in an improper manner at the time [that] he or she incurred the specific debt." *Billings*, 146 B.R. at 434; *see also Muegler v. Bening*, 413 F.3d 980, 983 (9th Cir. 2005) ("[T]he overriding purpose of § 523 is to protect victims of fraud." (citing *Cohen v. de la Cruz*, 523 U.S. 213, 222–23 (1998))). A § 523 complaint "focus[es] on the debtor's prior dealings with an objecting creditor, rather than on actions which necessarily affect the rights of all creditors." *Billings*, 146 B.R. at 434.

The Willmses' motion failed to reference § 523 or otherwise put Sanderson on notice that they sought to have a specific debt declared nondischargeable for being fraudulently obtained. Nor did the Willmses clarify the nature of their request before the hearing, which came after the 60-day deadline. *Compare In re Weinstein*, 234 B.R. 862, 864–65 (Bankr. E.D.N.Y. 1999) (construing request under Rule 4004 to extend the time to file adversary complaint "objecting to the discharge of the debtor" as request under Rule 4007 to extend the time to file § 523 complaint

WILLMS V. SANDERSON                    13

objecting to the dischargeability of particular debt where "the Movants . . . properly referred to Section 523 of the Bankruptcy Code, thereby placing the Debtor on notice that they sought to object to dischargeability of their debt," and "corrected the error prior to the hearing date"), *with Toth v. Ham (In re Ham)*, 174 B.R. 104, 106–08 (Bankr. S.D. Ill. 1994) (refusing to construe request for "an order extending the time [to] file a complaint objecting to the discharge of the debtors" as request under Rule 4007 where "[n]o request was made to extend the time in which to determine the dischargeability of certain debts, nor was Code § 523 referenced").[5]

It was the bankruptcy judge who first suggested a § 523 complaint after denying the motion that the Willmses actually filed. The most that could be gleaned from the Willmses' motion is that they sought to stop Sanderson's bankruptcy petition from being discharged or have it dismissed as a bad faith effort to abuse the bankruptcy process. In fact, that was precisely how Sanderson interpreted it. In opposing the motion, Sanderson argued that § 707(b) did not apply because his debts were not primarily consumer debts. Sanderson did not mention § 523 or dischargeability, likely because there was no indication that it would be at issue.

---

[5] As many courts did at the time, *Ham* described the time limit as being "jurisdictional." *See* 174 B.R. at 106–07 ("Once the limitation period expires, a creditor is jurisdictionally barred from seeking a determination of dischargeability pursuant to § 523(c), and the court has no choice but to dismiss any complaint filed after that time."). The Supreme Court has since clarified in *Kontrick* that the time limit, though strictly construed, is not jurisdictional and is subject to waiver. 540 U.S. at 447. Waiver was not an issue in *Ham*, however, and the bankruptcy court's mischaracterization of the time limit as jurisdictional did not affect the result.

By the time of the hearing, the time to extend the deadline for filing a § 523(a)(2) complaint had already expired. Because an extension of time to file a challenge to dischargeability had not then been discussed, Sanderson did not have notice that the Willmses intended to challenge the dischargeability of the SCI debt or their grounds for doing so. *See Markus v. Gschwend (In re Markus)*, 313 F.3d 1146, 1149–50 (9th Cir. 2002) (concluding that timely motion to object to discharge of bankruptcy petition due to the debtor's fraudulent actions did not describe the facts underlying the creditor's later-filed complaint objecting to dischargeability, which was therefore time-barred). The Willmses' complaint was untimely, and the bankruptcy court erred in granting the extension and allowing the Willmses to proceed.

### 3.

The Willmses argue in the alternative, and for the first time on appeal, that the bankruptcy court could have treated their motion under Rule 4004 as arising under Rule 4007(c) through the exercise of its equitable powers under 11 U.S.C. § 105(a). We disagree. Such a result would conflict with *Markus*, which holds that bankruptcy courts may not make such a characterization.[6]

More generally, § 105(a) is not a "roving commission to do equity." *Pac. Shores Dev., LLC v. At Home Corp. (In re*

---

[6] This does not preclude a bankruptcy court from correcting typographical or other non-substantive errors if a request for an extension makes clear to the debtor the nature of the challenge. *See, e.g.*, *Weinstein*, 234 B.R. at 865 (treating timely motion for extension mistakenly filed under Bankruptcy Rule 4004 as if it had been filed under Rule 4007 where the motion's substance provided adequate notice to the debtor).

*At Home Corp.)*, 392 F.3d 1064, 1070 (9th Cir. 2004)
(quoting *Saxman v. Educ. Credit Mgmt. Corp. (In re
Saxman)*, 325 F.3d 1168, 1175 (9th Cir. 2003)) (internal
quotation marks omitted).   A bankruptcy court's equitable
powers "must and can only be exercised within the confines
of the Bankruptcy Code."   *Norwest Bank Worthington v.
Ahlers*, 485 U.S. 197, 206, 108 S. Ct. 963, 99 L. Ed. 2d 169
(1988); *see also* 2 *Collier on Bankruptcy*, *supra*, at
¶ 105.02[5][c] (explaining that while courts occasionally
invoke § 105(a) to extend the time to assert a claim's
nondischargeability, an extension "normally can be granted
only in accordance with Bankruptcy Rule 4007(c)").

    We have previously rejected the use of § 105(a) to extend
the strict time limits enumerated in Bankruptcy Rule
9006(b)(3).   *See Zidell, Inc. v. Forsch (In re Coastal Alaska
Lines, Inc.)*, 920 F.2d 1428, 1431–33 (9th Cir. 1990).   In
*Coastal Alaska*, a creditor filed a proof of claim after
Bankruptcy Rule 3002(c)'s 90-day limit had expired.   This
time limit, like that in Rule 4007(c), is subject to Rule
9006(b)(3)'s prohibition on extensions except "to the extent
and under the conditions stated in those rules."   We examined
this language and concluded that it did not permit a court to
extend the time limit under its § 105(a) powers.

    On occasion, we have suggested that "'unique' or
'extraordinary' circumstances" might allow an untimely
§ 523(a)(2) complaint to stand.   *Kennerley*, 995 F.2d at 147;
*see also Anwar*, slip op. at 12 ("[A]bsent unique and
exceptional circumstances . . . , we do not inquire into the
reason a party failed to file on time in assessing whether she
is entitled to an equitable exception from [Bankruptcy Rule]
4007(c)'s filing deadline . . . .").   But "the validity of the
doctrine remains doubtful" and "would appear to be limited

16             WILLMS V. SANDERSON

to situations where a court *explicitly misleads* a party."
*Kennerley*, 995 F.2d at 147–48.   Thus, in *Anwiler* we
permitted creditors to file an untimely § 523 complaint
because the bankruptcy court had sent them a notice
containing the incorrect filing deadline.   We found that
"[a]llowing a court to correct its mistakes is not inconsistent
with the purpose of Bankruptcy Rules 4004 and 4007."
958 F.2d at 929.

The record here does not reflect any unique or
extraordinary circumstances.   No confusion existed over the
correct deadline.   The Willmses were represented by counsel
in the bankruptcy court just as they were while negotiating
the SCI note.   There is no legal or equitable reason why they
should have been allowed to file an untimely § 523
complaint.

## B.

The bankruptcy court also abused its discretion by
granting the time extension without either a showing or a
finding of cause.   At a minimum, "cause" means excusable
neglect. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. LP*,
507 U.S. 380, 382, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993).[7]
The bankruptcy court did not attempt to find cause for the
time extension—either at the hearing or in its subsequent

---

[7] In *Pioneer*, the Supreme Court embraced the factors that we previously
identified as relevant to determining the existence of excusable neglect:
(1) whether granting the delay would prejudice the debtor; (2) the delay's
length and impact on efficient court administration; (3) whether the delay
fell within the reasonable control of the person whose duty it was to
perform; (4) whether the creditor acted in good faith; and (5) whether
clients should be penalized for the mistake or neglect of their counsel.
507 U.S. at 385.

order.  Nor did the Willmses' motion provide a basis for such a finding.

The Willmses asserted only that they needed additional time "to complete an investigation and evaluate whether or not a complaint objecting to discharge or a motion to dismiss is warranted."  Critically, they failed to explain *why* they did not complete their investigation prior to the deadline.  While the "cause" standard may be a lenient one, accepting the Willmses' request for more time so that they could determine whether or not they even *had* a viable argument for nondischargeability—without any explanation why they could not have made this determination within the time set by Rule 4007—would render the standard toothless.  *See* 9 *Collier on Bankruptcy*, *supra*, at ¶ 4007.04 ("[T]he cause for an extension [under Rule 4004] must be compelling and a creditor must show why it was not able to comply with the deadline as originally set.").  The bankruptcy court therefore erred in granting the time extension.[8]

## IV.

Ultimately, the bankruptcy court dismissed the case—albeit after needless delay and expense—because the Willmses failed to prove that Sanderson acted fraudulently in procuring the loan from them.  Because we hold that the Willmses should not have been allowed to file their adversary complaint, we need not reach the bankruptcy court's decision to consider the supposedly new evidence that Sanderson cited in his post-trial motion for reconsideration and that impelled

---

[8] In fact, the bankruptcy court abused its discretion merely by failing to apply the *Pioneer* factors.  *See Oyama v. Sheehan (In re Sheehan)*, 253 F.3d 507, 515 (9th Cir. 2001).

18          WILLMS V. SANDERSON

the bankruptcy court's final decision.  We also do not reach the merits of the parties' underlying dispute.

We vacate the district court's judgment.  On remand, the district court should vacate the bankruptcy court's orders and remand this matter to the bankruptcy court with instructions to deny the Willmses' request to file a nondischargeability complaint and dismiss the adversary proceeding with prejudice.

**VACATED** and **REMANDED** with instructions.